**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION; STATE OF ARIZONA; THE PEOPLE OF THE STATE OF CALIFORNIA; ATTORNEY GENERAL OF COLORADO; THE PEOPLE OF THE STATE OF ILLINOIS; THE PEOPLE OF THE STATE OF MICHIGAN; STATE OF NORTH CAROLINA; STATE OF OKLAHOMA; COMMONWEALTH OF PENNSYLVANIA; STATE OF SOUTH CAROLINA; UTAH DIVISION OF CONSUMER PROTECTION; STATE OF WISCONSIN,<br>Plaintiffs,<br><br>v.<br><br>WALMART INC., a corporation;<br><br>Defendant. | Case No. 3:26-cv-1655<br><br>**[PROPOSED] STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |

Plaintiffs, the Federal Trade Commission (the "Commission" or "FTC"); the Attorney General of the State of Arizona; the People of the State of California, by and through the District Attorney of Alameda County; Philip J. Weiser, Attorney General of Colorado; the People of the State of Illinois, by Kwame Raoul, Illinois Attorney General; the People of the State of Michigan; the Attorney General of the State of North Carolina; the Attorney General of the State of Oklahoma; the Commonwealth of Pennsylvania, by and through its Attorney General David W. Sunday, Jr.; the State of South Carolina; the Utah Division of Consumer Protection; and the State of Wisconsin filed their Complaint for Permanent Injunction, Monetary Judgment, and Other Relief (the "Complaint") for a permanent injunction, monetary relief, civil penalties, and other relief in this matter pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) & 57b, Section 521 of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6821, the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521-1534, the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*., the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-101 *et seq.*, the Illinois Consumer Fraud Act, 815 ILCS 505, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*, the North Carolina Unfair or Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, *et seq*., the Oklahoma Consumer Protection Act, 15 O.S. §§ 751-763, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-20, 50, and 110, the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq*., and the Wisconsin Deceptive Trade Practices Act, Wis. Stats. §§ 100.18 *et seq*. Plaintiffs and Defendant stipulate to entry of this [Proposed] Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters in dispute between them.

THEREFORE, IT IS ORDERED as follows:

1. The Court has jurisdiction over this matter.

2. The Complaint charges that Defendant participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the GLBA, 15 U.S.C. §§

6801-6809, 6821-6827, the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521-1534, the California Unfair Competition Law ("UCL") (California Business & Professions Code § 17200 *et seq.*) and the California False Advertising Law ("FAL") (California Business & Professions Code § 17500 *et seq.*), the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-101 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*, the North Carolina Unfair or Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, *et seq*., the Oklahoma Consumer Protection Act, 15 O.S. §§ 751-763, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-20, 50, and 110, the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq*., and the Wisconsin Deceptive Trade Practices Act, Wis. Stats. §§ 100.18 *et seq.*, in the operation of Walmart Spark Driver.

3. Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4. Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5. Unless stated otherwise, all obligations contained herein shall extend for a period of ten (10) years.

6. Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

A. "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is easily noticeable (i.e., difficult to miss) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure

must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for reasonable consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to reasonable consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, older adults or the terminally ill, "reasonable consumers" includes members of that group.

B. "**Customer**" means a person that places an order for goods to be subsequently delivered via the Spark Driver Program.

C. "**Defendant**" means Walmart Inc. and its successors and assigns.

D. "**Driver**" means an individual located anywhere in the United States, the District of Columbia and all United States territories who accepts an offer to shop for and/or deliver goods in connection with the Spark Driver Program.

E. "**Driver Fund**" means the account established to provide restitution and redress to drivers described in Section V.

F. "**Earnings**" means any money paid by the Defendant or its agents as compensation in connection with the Spark Driver Program.

G. "**Effective Date**" means the date on which this Order is entered.

H. "**Eligible Offset Payment(s)**" means (1) any money that was (a) paid by Defendant, (b) to a Driver, and (c) that was paid to redress (i) the difference between any Earnings and/or Tip that was shown in an Initial Offer Card between January 1, 2021 and the Effective Date and the amount of Earnings and/or Tip that was actually paid to the Driver in connection with the same Offer, or (ii) any Incentive payment that was owed to a Driver for completing the applicable trip requirements but was not paid, or (2) amounts identified in the Commission's calculation of equitable monetary relief that Defendant has demonstrated are not owed, in whole or in part, with respect to Drivers. "Eligible Offset Payments" do not include any interest on any money paid as redress.

I. "**Incentive**" means any opportunity for a Driver to receive money by referring new Drivers or completing certain trip requirements that are not dependent on a specific Offer.

J. "**Initial Offer Card**" means the first Offer Card shown to a Driver. Initial Offer Card does not include any subsequent disclosures related to the Offer.

K. "**Offer**" means any opportunity for a Driver to perform a specific task or tasks in exchange for money in connection with the Spark Driver Program.

L. "**Offer Card**" means any information presented to a Driver related to a specific Offer, including through the Initial Offer Card and any subsequent disclosures prior to the Driver's acceptance of the Offer.

M. "**Plaintiffs**" means the Federal Trade Commission and the State Plaintiffs, collectively.

N. "**Spark Driver Program**" means a platform operated by Defendant, Defendant's officers, agents, employees, or Defendant's successors or assigns, to contract with individuals to shop for and/or deliver goods on a per-delivery basis in the United States.

O. "**State Plaintiffs**" means the State of Arizona, the People of the State of California, by and through the District Attorney for Alameda County, the Attorney General of Colorado, the People of the State of Illinois, the People of the State of Michigan, the State of North Carolina, the State of Oklahoma, the Commonwealth of Pennsylvania, the State of South Carolina, the Utah Division of Consumer Protection, and the State of Wisconsin.

P. "**Tip**" means any money paid by an individual, other than Defendant or its agents, to one or more Drivers in connection with an Offer.

## ORDER

## I. MANDATED EARNINGS VERIFICATION PROGRAM

IT IS ORDERED that Defendant, in connection with the operation of the Spark Driver Program must, within nine (9) months of the Effective Date, operate an earnings verification program ("Earnings Verification Program") designed to ensure that Drivers are paid the amount of money shown in the Initial Offer Card (aside from the changes described in Section II) upon completion of the Offer and are paid for any Incentives that they have completed. To satisfy this requirement, Defendant must, at a minimum, for a period of ten (10) years:

A. Document in writing the requirements of the Earnings Verification Program;

B. Designate a qualified employee to coordinate and be responsible for the Earnings Verification Program;

C. Assess and document, in a centralized location and at least annually, all of the instances in which a Driver was not paid the amount of money shown in the Initial Offer Card despite completion of that Offer;

D. Assess and document, in a centralized location and at least annually, all of the instances in which a Driver was not paid for completing an Incentive despite satisfying the express requirements of the Incentive;

E. Assess and document, at least every twelve (12) months, the effectiveness of the Earnings Verification Program;

F. Adopt procedures requiring Defendant to make all reasonable efforts to remediate any instances in which a Driver was not paid the amount of money shown in the Initial Offer Card (aside from the changes described in Section II);

G. Retain all documents and evidence underlying the assessments for at least five (5) years following the assessments, which may be provided to the Commission upon request; and

H. Provide a report, at least once every twelve (12) months, to the Commission summarizing the assessments and including information sufficient to show the effectiveness of the Earnings Verification Program and Walmart's efforts to remediate instances in which a Driver was not paid the amount of money shown in the Initial Offer Card that do not fall within the circumstances described in Section II.A-II.F. The initial report must cover the first 365 days after establishment of the Earnings Verification Program, and reports must be provided within 90 days of the end of the reporting period.

## II. PROHIBITION AGAINST MODIFYING OFFERS POST-ACCEPTANCE

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the operation of the Spark Driver Program are prohibited from modifying an Offer, including reducing the Earnings and/or Tip stated in an Offer, after a Driver has accepted the Offer, unless one of the following exceptions applies, provided, however, that Defendant can increase Tips or Earnings at its discretion:

A. The change is attributable to a Driver requesting that the Offer be modified, dropped or canceled;

B. The change is attributable to a Driver missing a reasonable delivery window or violating the Service Level Standards in the Terms of Use;

C. The change is attributable to a Customer, including a Customer canceling or rescheduling their order, converting the order to a pickup order, canceling or modifying items in the order, or modifying their Tip;

D. The change is attributable to an unmet compliance-related requirement, such as cold chain compliance or similar regulatory rule, and the failure to comply with that requirement is attributable to the Driver;

E. The Driver is presented with the option to cancel the changed trip without penalty and receive a Clearly and Conspicuously disclosed flat fee, provided, however, that the method Defendant uses to determine the flat fee has been Clearly and Conspicuously disclosed to the Driver before the Driver receives the Offer; or

F. The change is attributable to a force majeure event or a third party that is not an affiliate, agent, or entity subject to Defendant's direction or control, is not within Defendant's control and not caused by Defendant's acts or omissions, and the Driver is paid a Clearly and Conspicuously disclosed flat fee, provided, however, that the method Defendant uses to determine the flat fee has been Clearly and Conspicuously disclosed to the Driver before the Driver receives the Offer.

## III. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that:

A. Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

1. The estimated amount of money that a Driver will receive if they complete an Offer;

2. The approximate distance that a Driver will need to travel in order to

complete an Offer;

3. The estimated amount of time that an Offer will take to complete;

4. The approximate time by which a Driver must arrive at the store;

5. The number of stops the Driver will need to make to complete an Offer;

6. The terms of any Incentive including, but not limited to, the location where the Incentive is active, the time period during which the Incentive is active, the number of Offers that must be completed, and/or the type of Offers that are eligible;

7. That a customer's Tip will be paid to a Driver;

8. Any factors that are used to calculate a Driver's Earnings; and

9. Any material facts regarding an Offer including, but not limited to, the items that the Driver will need to shop for or deliver, the number of items, the weight of the items, or the size of the items.

B. Defendant shall not be deemed to have violated this Section if the alleged misrepresentation is based on information provided to Defendant by a reliable third-party data source, such as mapping software (e.g., Google Maps). Furthermore, nothing in this Section shall obligate Defendant to make any disclosure not otherwise required by law.

## IV. INJUNCTION RELATING TO OBTAINING CUSTOMER FINANCIAL INFORMATION

IT IS FURTHER ORDERED that Defendant and Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A. Obtaining or attempting to obtain customer information of a financial institution (including bank account routing number, account number, log-in credentials, private keys, or cryptocurrency wallet information) from a consumer by making false, fictitious, or fraudulent representations to any consumer or financial institution; or

B. Violating the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, 6821-6827, a copy of which is attached.

## V. MONETARY JUDGMENTS

IT IS FURTHER ORDERED that Defendant is subject to $100,000,000 in judgments as follows:

A. Judgment in the amount of $89,000,000 is entered in favor of the Commission against Defendant as nationwide monetary relief (the "Monetary Relief Judgment").

B. Defendant is ordered to pay to the Commission $10,000,000, which, as Defendant stipulates, their undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of the Effective Date by electronic fund transfer in accordance with instructions provided by a representative of the Commission. Upon such payment, the remainder of the Monetary Relief Judgment is suspended, subject to the subsections below.

C. Subject to the conditions set forth in this Order, payment of $62,824,698 of the judgment is suspended. The Commission's agreement to the suspension of part of the Monetary Relief Judgment is expressly premised upon the truthfulness, accuracy and completeness of Defendant's document and data productions to the Commission on September 30, 2025, December 13, 2025, December 14, 2025, December 21, 2025, January 9, 2026, January 12, 2026, and January 14, 2026, and Defendant's representations to the Commission regarding incentive payments on January 14, 2026, to validate the Eligible Offset Payments.

D. Defendant shall satisfy the remainder of the judgment by establishing and funding the Driver Fund with $16,175,302, and making payments from the Driver Fund to redress the difference between (i) any Earnings and/or Tip that was shown in an Initial Offer Card between January 1, 2021 and the Effective Date and the amount of Earnings and/or Tip that was actually paid to the Driver in connection with the same Offer, or (ii) any Incentive payment that was owed to a Driver for completing the applicable trip requirements but was not paid, subject to the following provisions:

1. Within 120 days of the Effective Date, Defendant shall submit to the Commission data sufficient to allow a representative of the Commission to verify the amount of money that Defendant successfully paid to Drivers from the Driver Fund. Along with the data, Defendant shall provide a declaration by a corporate officer, under penalty of perjury, that the data is true, accurate, and complete.

2. Within 150 days of the Effective Date, Defendant is ordered to pay to the Commission any amounts remaining in the Driver Fund that have not been distributed to Drivers and documented to the FTC in accordance with Section V.D.1. Such payment must be by electronic fund transfer in accordance with instructions provided by a representative of the Commission.

E. The suspension of the Monetary Relief Judgment will be lifted if, upon motion by the Commission, the Court finds that Defendant failed to accurately demonstrate that it made the amount of Eligible Offset Payments paid to Drivers. Within 21 days of the Effective Date, Defendant shall send a notice in the form of Attachment A to all Drivers who received an Eligible Offset Payment. The notice shall not contain or be accompanied by any statements or illustrations not set forth in Attachment A.

F. Judgment in the amount of $11,000,000 is entered in favor of the State Plaintiffs against Defendant (the "Payment to the States"), which is to be divided among the State Plaintiffs. Defendant is ordered to pay the State Plaintiffs $11,000,000, which, as Defendant stipulates, their undersigned counsel holds in escrow for no purpose other than payment to the State Plaintiffs. Such payment shall be distributed in the manner and for the purposes specified in this Order and in Attachment B. Such payment must be made within 7 days of the Effective Date by electronic fund transfer in accordance with instructions provided by the representatives of each State Plaintiff.

## VI. ADDITIONAL MONETARY PROVISIONS

A. Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission or the State Plaintiffs in a proceeding to enforce any rights to any payment or monetary judgment pursuant to this Order, such as a non-dischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Defendant acknowledges that Defendant's Employer Identification Number or other Taxpayer Identification Number ("TIN"), including all TINs that Defendant previously provided, may be used by the Commission and the State Plaintiffs for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. § 7701.

E. All money received by the Commission pursuant to the Monetary Judgment in this Order may be deposited into a fund administered by the Commission or its designee to be used for additional consumer relief, such as redress and any attendant expenses for the administration of any redress fund, and shall fully satisfy Defendant's obligation to provide monetary relief arising from the conduct alleged in the Complaint. If a representative of the Commission decides that additional redress to consumers is wholly or partially impracticable or money remains after such additional redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for relief is to be deposited to the U.S. Treasury. Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VII. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any good or service are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## VIII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A. Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 10 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibility for the Spark Driver Program or any similar program; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 8 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that:

A. Within one (1) year of the Effective Date, Defendant must submit a compliance report, sworn under penalty of perjury. In this compliance report, Defendant must (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and State Plaintiffs may use to communicate with Defendant; (b) identify all of Defendant's businesses that utilize Earnings, Tips, or Incentives by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each such business, including the goods and services

offered, the means of advertising, marketing, and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B. For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: (a) any designated point of contact; or (b) the structure of any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C. Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Walmart, FTC Matter No. 2323055.

## X. RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 10 years after entry of the Order and retain each such record for 5 years. Specifically, Defendant must create and retain the following records:

A. Records showing, for each Driver, that person's name, address, telephone numbers, dates the Driver maintained an active registration on the Spark Driver app, and (if applicable) the reason for termination from the Spark Driver program;

B. Records of all Driver communications regarding underpayment for a completed trip or Incentive related to the Spark Driver Program, whether received directly or indirectly, such as through a third party, and any response;

C. Records of the number of orders delivered and trips made as part of the Spark Driver Program;

D. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E. A copy of each unique advertisement or marketing material directed to the general public related to earnings for the Spark Driver Program.

## XI. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A. Within 45 days of receipt of a written request from a representative of the Commission or the State Plaintiffs, Defendant must submit additional compliance reports or other requested information related to compliance with this Order, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission and State Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission and State Plaintiffs are authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission and State Plaintiffs to interview any employee, or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. The Commission and State Plaintiffs may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**PURSUANT TO STIPULATION, IT IS SO ORDERED this 3rd day of March 2026.**

UNITED STATES MAGISTRATE JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

Dated: February 26, 2026

*/s/ Aaron M. Schue*___________________

AARON M. SCHUE, SBN 338760
JORDAN X. NAVARRETTE, SBN 306143
MILES D. FREEMAN, SBN 299302
DAVID L. HANKIN, SBN 319825
BARBARA CHUN, SBN 186907
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

*Attorneys for Plaintiff Federal Trade Commission*

**FOR PLAINTIFF THE STATE OF ARIZONA:**

Dated: February 26, 2026

KRIS MAYES
Attorney General of the State of Arizona

*/s/ Jayme L. Weber*____________________

JAYME L. WEBER, SBN 330107
Office of the Attorney General
Civil Litigation Division
400 W. Congress St., Ste. S-215
Tucson, AZ 85701
Tel: (602) 542-5025
Fax: (602) 542-4377

*Attorney for Plaintiff the State of Arizona*

**FOR PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA:**

Dated: February 26, 2026

URSULA JONES DICKSON
District Attorney

*/s/Andres H. Perez*________________________
ANDRES H. PEREZ, SBN 186219
Office of the Alameda County District Attorney
1225 Fallon Street, Suite 900
Oakland, CA 94612
Tel: (510) 272-6222
Fax: (510) 271-5157

*Attorney for Plaintiff the People of the State of California*

**FOR PLAINTIFF ATTORNEY GENERAL OF COLORADO:**

Dated: February 26, 2026

PHILIP J. WEISER
Colorado Attorney General

*/s/Julianne B. Cramer*
JULIANNE B. CRAMER, CA SBN 227771
Consumer Protection Section
1300 Broadway, 9th Floor
Denver, CO 80203
Tel: (720) 508-6000
Fax: (720) 508-6040

*Attorney for Plaintiff Attorney General of Colorado*

**FOR PLAINTIFF THE PEOPLE OF THE STATE OF ILLINOIS:**

Dated: February 26, 2026

KWAME RAOUL
Attorney General

*/s/ William S. Wingo*
WILLIAM S. WINGO, *pro hac vice forthcoming or pending*
WILTON A. PERSON *pro hac vice forthcoming or pending*
Office of the Illinois Attorney General
Consumer Fraud Bureau
115 S. LaSalle Street, 26th Floor
Chicago, Illinois 60603
Tel: (312) 814-3000
Fax: (312) 814-3806

*Attorneys for Plaintiff the People of the State of Illinois*

**FOR PLAINTIFF THE PEOPLE OF THE STATE OF MICHIGAN:**

Dated: February 26, 2026

DANA NESSEL
Michigan Attorney General

*/s/ Aaron W. Levin*

AARON W. LEVIN, *pro hac vice forthcoming or pending*
Michigan Department of Attorney General
Corporate Oversight Division
525 W. Ottawa Street
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
Fax: (517) 335-6755

*Attorney for Plaintiff the People of State Michigan*

**FOR PLAINTIFF THE STATE OF NORTH CAROLINA:** Dated: February 26, 2026

JEFF JACKSON
North Carolina Attorney General

*/s/ Jesse Ramos*
JESSE RAMOS, *pro hac vice forthcoming or pending*
North Carolina Department Of Justice
Post Office Box 629
Raleigh, NC 27602
Tel: (919) 716-6000
Fax: (919) 716-6050

*Attorney for Plaintiff the State of North Carolina*

**FOR PLAINTIFF THE STATE OF OKLAHOMA:**

Dated: February 26, 2026

GENTNER DRUMMOND
Attorney General of Oklahoma

*/s/ Cameron Capps*
CAMERON CAPPS, *pro hac vice forthcoming or pending*
Oklahoma Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Tel: (405) 521-3921
Fax: (405) 521-6246

*Attorney for Plaintiff the State of Oklahoma*

**FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:**

Dated: February 26, 2026

DAVID W. SUNDAY, JR.
Attorney General for the Commonwealth of Pennsylvania

*/s/ John M. Abel*__________________________
JOHN M. ABEL, *pro hac vice forthcoming or pending*
Pennsylvania Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Tel: (717) 497-5123
Fax: (717) 705-3795

FRANCESCA MILLER-SURMAN, *pro hac vice forthcoming or pending*
Pennsylvania Office of Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222
Tel: (412) 565-7680
Fax: (412) 565-3019

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

**FOR PLAINTIFF THE STATE OF SOUTH CAROLINA:** Dated: February 26, 2026

ALAN M. WILSON
South Carolina Attorney General

*/s/ Jared Q. Libet*__________________________
JARED Q. LIBET, *pro hac vice forthcoming or pending*
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Tel: (803) 734-3970
Fax: (803) 734-0513

*Attorney for Plaintiff the State of South Carolina*

**FOR PLAINTIFF UTAH DIVISION OF CONSUMER PROTECTION:**

Dated: February 26, 2026

DEREK BROWN
Utah Attorney General

*/s/ Stevenson Smith*________________________
STEVENSON SMITH, *pro hac vice forthcoming or pending*
CARINA WELLS, *pro hac vice forthcoming or pending*

Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
Tel: (801) 336-0310
Fax: (801) 530-6601

*Attorney for Plaintiff Utah Division of Consumer Protection*

**FOR PLAINTIFF STATE OF WISCONSIN:** Dated: February 26, 2026

JOSHUA L. KAUL
Wisconsin Attorney General

*/s/ Laura E. McFarlane*____________________
LAURA E. MCFARLANE, *pro hac vice forthcoming or pending*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707
Tel: (608) 266-8911
Fax: (608) 266-2250

*Attorney for Plaintiff State of Wisconsin*

**FOR DEFENDANT WALMART INC.:** Dated: January 28, 2026

JAMES M. MCDONALD, *pro hac vice forthcoming*
mcdonaldj@sullcrom.com
PAULENA B. PRAGER, *pro hac vice forthcoming*
pragerp@sullcrom.com
ANNE F. CLARK, *pro hac vice forthcoming*
clarkaf@sullcrom.com
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Tel: (212) 558-3030
Fax: (212) 558-1600

DIANE L. MCGIMSEY
mcgimseyd@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
Tel: (310) 712-6600
Fax: (310) 712-8800

*Attorneys for Defendant Walmart Inc.*

**DEFENDANT WALMART INC.:** Dated: January 28, 2026

[REPRESENTATIVE OF WALMART INC.]

ROBERT BALFE
SVP-LEGAL INV.

**ATTESTATION**

I, Aaron M. Schue, am the ECF user whose user ID and password authorized the filing of this document. Under Civil Local Rule 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

Dated: February 26, 2026

*_/s/ Aaron M. Schue_*
Aaron M. Schue

# ATTACHMENT

# COPY OF THE GRAMM-LEACH-BLILEY ACT 15 U.S.C. §§ 6801-6809, 6821-6827

## CHAPTER 94—PRIVACY

SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

Sec.
6801. Protection of nonpublic personal information.
6802. Obligations with respect to disclosures of personal information.
6803. Disclosure of institution privacy policy.
6804. Rulemaking.
6805. Enforcement.
6806. Relation to other provisions.
6807. Relation to State laws.
6808. Study of information sharing among financial affiliates.
6809. Definitions.

SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

6821. Privacy protection for customer information of financial institutions.
6822. Administrative enforcement.
6823. Criminal penalty.
6824. Relation to State laws.
6825. Agency guidance.
6826. Reports.
6827. Definitions.

### SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

## §6801. Protection of nonpublic personal information

**(a) Privacy obligation policy**

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

**(b) Financial institutions safeguards**

In furtherance of the policy in subsection (a), each agency or authority described in section 6805(a) of this title, other than the Bureau of Consumer Financial Protection, shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards—

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

(Pub. L. 106–102, title V, §501, Nov. 12, 1999, 113 Stat. 1436; Pub. L. 111–203, title X, §1093(1), July 21, 2010, 124 Stat. 2095.)

### Editorial Notes

### Amendments

**2010**—Subsec. (b). Pub. L. 111–203 inserted ", other than the Bureau of Consumer Financial Protection," after "section 6805(a) of this title" in introductory provisions.

### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

### EFFECTIVE DATE

Pub. L. 106–102, title V, §510, Nov. 12, 1999, 113 Stat. 1445, provided that: "This subtitle [subtitle A (§§501–510) of title V of Pub. L. 106–102, enacting this subchapter and amending section 1681s of this title] shall take effect 6 months after the date on which rules are required to be prescribed under section 504(a)(3) [15 U.S.C. 6804(a)(3)], except—

"(1) to the extent that a later date is specified in the rules prescribed under section 504; and

"(2) that sections 504 [15 U.S.C. 6804] and 506 [enacting section 6806 of this title and amending section 1681s of this title] shall be effective upon enactment [Nov. 12, 1999]."

## §6802. Obligations with respect to disclosures of personal information

**(a) Notice requirements**

Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

**(b) Opt out**

**(1) In general**

A financial institution may not disclose nonpublic personal information to a nonaffiliated third party unless—

(A) such financial institution clearly and conspicuously discloses to the consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, that such information may be disclosed to such third party;

(B) the consumer is given the opportunity, before the time that such information is initially disclosed, to direct that such information not be disclosed to such third party; and

(C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

**(2) Exception**

This subsection shall not prevent a financial institution from providing nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution, including marketing of the financial institution's own products or services, or financial products or services offered pursuant to joint agreements between two or more financial institutions that comply with the requirements imposed by the regulations prescribed under section 6804 of this title, if the financial institution fully discloses the providing of such information and enters into a contractual agreement with the third party that requires the third party to maintain the confidentiality of such information.

**(c) Limits on reuse of information**

Except as otherwise provided in this subchapter, a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.

**(d) Limitations on the sharing of account number information for marketing purposes**

A financial institution shall not disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a credit card account, deposit account, or transaction account of a consumer to any nonaffiliated third party for use in telemarketing, direct mail marketing, or other marketing through electronic mail to the consumer.

**(e) General exceptions**

Subsections (a) and (b) shall not prohibit the disclosure of nonpublic personal information—

(1) as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer, or in connection with—

(A) servicing or processing a financial product or service requested or authorized by the consumer;

(B) maintaining or servicing the consumer's account with the financial institution, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity; or

(C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer;

(2) with the consent or at the direction of the consumer;

(3)(A) to protect the confidentiality or security of the financial institution's records pertaining to the consumer, the service or product, or the transaction therein; (B) to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability; (C) for required institutional risk control, or for resolving customer disputes or inquiries; (D) to persons holding a legal or beneficial interest relating to the consumer; or (E) to persons acting in a fiduciary or representative capacity on behalf of the consumer;

(4) to provide information to insurance rate advisory organizations, guaranty funds or agencies, applicable rating agencies of the financial institution, persons assessing the institution's compliance with industry standards, and the institution's attorneys, accountants, and auditors;

(5) to the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C. 3401 et seq.], to law enforcement agencies (including the Bureau of Consumer Financial Protection [1] a Federal functional regulator, the Secretary of the Treasury with respect to subchapter II of chapter 53 of title 31, and chapter 2 of title I of Public Law 91–508 (12 U.S.C. 1951–1959), a State insurance authority, or the Federal Trade Commission), self-regulatory organizations, or for an investigation on a matter related to public safety;

(6)(A) to a consumer reporting agency in accordance with the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], or (B) from a consumer report reported by a consumer reporting agency;

(7) in connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business or unit; or

(8) to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

(Pub. L. 106–102, title V, §502, Nov. 12, 1999, 113 Stat. 1437; Pub. L. 111–203, title X, §1093(2), July 21, 2010, 124 Stat. 2095.)

### Editorial Notes

## References in Text

This subchapter, referred to in subsecs. (a) and (c), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Right to Financial Privacy Act of 1978, referred to in subsec. (e)(5), is title XI of Pub. L. 95–630, Nov. 10, 1978, 92 Stat. 3697, which is classified generally to chapter 35 (§3401 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 3401 of Title 12 and Tables.

Chapter 2 of title I of Public Law 91–508, referred to in subsec. (e)(5), is chapter 2 (§§121–129) of title I of Pub. L. 91–508, Oct. 26, 1970, 84 Stat. 1116, which is classified generally to chapter 21 (§1951 et seq.) of Title 12, Banks and Banking. For complete classification of chapter 2 to the Code, see Tables.

The Fair Credit Reporting Act, referred to in subsec. (e)(6)(A), is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

## Amendments

**2010**—Subsec. (e)(5). Pub. L. 111–203 inserted "the Bureau of Consumer Financial Protection" after " (including".

### Statutory Notes and Related Subsidiaries

## Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

[1] *So in original. Probably should be followed by a comma.*

# §6803. Disclosure of institution privacy policy

**(a) Disclosure required**

At the time of establishing a customer relationship with a consumer and not less than annually during the continuation of such relationship, a financial institution shall provide a clear and conspicuous disclosure to such consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, of such financial institution's policies and practices with respect to—

(1) disclosing nonpublic personal information to affiliates and nonaffiliated third parties, consistent with section 6802 of this title, including the categories of information that may be disclosed;

(2) disclosing nonpublic personal information of persons who have ceased to be customers of the financial institution; and

(3) protecting the nonpublic personal information of consumers.

**(b) Regulations**

Disclosures required by subsection (a) shall be made in accordance with the regulations prescribed under section 6804 of this title.

**(c) Information to be included**

The disclosure required by subsection (a) shall include—

(1) the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties, other than agents of the institution, consistent with section 6802 of this title, and including —

(A) the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided pursuant to section 6802(e) of this title; and

(B) the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution;

(2) the categories of nonpublic personal information that are collected by the financial institution;

(3) the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information in accordance with section 6801 of this title; and

(4) the disclosures required, if any, under section 1681a(d)(2)(A)(iii) of this title.

**(d) Exemption for certified public accountants**

**(1) In general**

The disclosure requirements of subsection (a) do not apply to any person, to the extent that the person is—

(A) a certified public accountant;

(B) certified or licensed for such purpose by a State; and

(C) subject to any provision of law, rule, or regulation issued by a legislative or regulatory body of the State, including rules of professional conduct or ethics, that prohibits disclosure of nonpublic personal information without the knowing and expressed consent of the consumer.

**(2) Limitation**

Nothing in this subsection shall be construed to exempt or otherwise exclude any financial institution that is affiliated or becomes affiliated with a certified public accountant described in paragraph (1) from any provision of this section.

**(3) Definitions**

For purposes of this subsection, the term "State" means any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, the Trust Territory of the Pacific Islands, the Virgin Islands, or the Northern Mariana Islands.

**(e) Model forms**

**(1) In general**

The agencies referred to in section 6804(a)(1) of this title shall jointly develop a model form which may be used, at the option of the financial institution, for the provision of disclosures under this section.

**(2) Format**

A model form developed under paragraph (1) shall—

(A) be comprehensible to consumers, with a clear format and design;

(B) provide for clear and conspicuous disclosures;

(C) enable consumers easily to identify the sharing practices of a financial institution and to compare privacy practices among financial institutions; and

(D) be succinct, and use an easily readable type font.

**(3) Timing**

A model form required to be developed by this subsection shall be issued in proposed form for public comment not later than 180 days after October 13, 2006.

**(4) Safe harbor**

Any financial institution that elects to provide the model form developed by the agencies under this subsection shall be deemed to be in compliance with the disclosures required under this section.

**(f) Exception to annual notice requirement**

A financial institution that—

(1) provides nonpublic personal information only in accordance with the provisions of subsection (b)(2) or (e) of section 6802 of this title or regulations prescribed under section 6804(b) of this title, and

(2) has not changed its policies and practices with regard to disclosing nonpublic personal information from the policies and practices that were disclosed in the most recent disclosure sent to consumers in accordance with this section,

shall not be required to provide an annual disclosure under this section until such time as the financial institution fails to comply with any criteria described in paragraph (1) or (2).

(Pub. L. 106–102, title V, §503, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 109–351, title VI, §609, title VII, §728, Oct. 13, 2006, 120 Stat. 1983, 2003; Pub. L. 114–94, div. G, title LXXV, §75001, Dec. 4, 2015, 129 Stat. 1787.)

### Editorial Notes

### Amendments

**2015**—Subsec. (f). Pub. L. 114–94 added subsec. (f).

**2006**—Pub. L. 109–351 designated concluding provisions of subsec. (a) as (b), inserted heading, substituted "Disclosures required by subsection (a)" for "Such disclosures", redesignated former subsec. (b) as (c), and added subsecs. (d) and (e).

### Executive Documents

### Termination of Trust Territory of the Pacific Islands

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

## §6804. Rulemaking

**(a) Regulatory authority**

**(1) Rulemaking**

**(A) In general**

Except as provided in subparagraph (C), the Bureau of Consumer Financial Protection and the Securities and Exchange Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to their respective jurisdiction under section 6805 of this title (and notwithstanding subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]), except that the Bureau of Consumer Financial Protection shall not have authority to prescribe regulations with respect to the standards under section 6801 of this title.

**(B) CFTC**

The Commodity Futures Trading Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to the jurisdiction of the Commodity Futures Trading Commission under section 7b–2 of title 7.

**(C) Federal Trade Commission authority**

Notwithstanding the authority of the Bureau of Consumer Financial Protection under subparagraph (A), the Federal Trade Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to any financial institution that is a person described in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)].

**(D) Rule of construction**

Nothing in this paragraph shall be construed to alter, affect, or otherwise limit the authority of a State insurance authority to adopt regulations to carry out this subchapter.

**(2) Coordination, consistency, and comparability**

Each of the agencies authorized under paragraph (1) to prescribe regulations shall consult and coordinate with the other such agencies and, as appropriate, and with [1] representatives of State insurance authorities designated by the National Association of Insurance Commissioners, for the purpose of assuring, to the extent possible, that the regulations prescribed by each such agency are consistent and comparable with the regulations prescribed by the other such agencies.

**(3) Procedures and deadline**

Such regulations shall be prescribed in accordance with applicable requirements of title 5.

**(b) Authority to grant exceptions**

The regulations prescribed under subsection (a) may include such additional exceptions to subsections (a) through (d) of section 6802 of this title as are deemed consistent with the purposes of this subchapter.

(Pub. L. 106–102, title V, §504, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 111–203, title X, §1093(3), July 21, 2010, 124 Stat. 2095.)

### Editorial Notes

## References in Text

This subchapter, referred to in subsecs. (a)(1) and (b), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Consumer Financial Protection Act of 2010, referred to in subsec. (a)(1)(A), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitle B (§§1021–1029A) of the Act is classified generally to part B (§5511 et seq.) of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitle B to the Code, see Tables.

## Amendments

**2010**—Subsec. (a)(1), (2). Pub. L. 111–203, §1093(3)(A), added pars. (1) and (2) and struck out former pars. (1) and (2) which related, respectively, to rulemaking by the Federal banking agencies, the National Credit Union Administration, the Secretary of the Treasury, the Securities and Exchange Commission, and the Federal Trade Commission, and consultation and coordination among these agencies and authorities to assure consistency and comparability of regulations.

Subsec. (a)(3). Pub. L. 111–203, §1093(3)(B), struck out "and shall be issued in final form not later than 6 months after November 12, 1999" after "title 5".

### Statutory Notes and Related Subsidiaries

## Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

[1] *So in original. Probably should be "and, as appropriate, with".*

# §6805. Enforcement

**(a) In general**

Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:

(1) Under section 1818 of title 12, by the appropriate Federal banking agency, as defined in section 1813(q) of title 12, in the case of—

(A) national banks, Federal branches and Federal agencies of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], and bank holding companies and their

nonbank subsidiaries or affiliates (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), insured State branches of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers); and

(D) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, and any subsidiaries of such savings associations (except brokers, dealers, persons providing insurance, investment companies, and investment advisers).

(2) Under the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Board of the National Credit Union Administration with respect to any federally insured credit union, and any subsidiaries of such an entity.

(3) Under the Securities Exchange Act of 1934 [15 U.S.C. 78a et seq.], by the Securities and Exchange Commission with respect to any broker or dealer.

(4) Under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], by the Securities and Exchange Commission with respect to investment companies.

(5) Under the Investment Advisers Act of 1940 [15 U.S.C. 80b–1 et seq.], by the Securities and Exchange Commission with respect to investment advisers registered with the Commission under such Act.

(6) Under State insurance law, in the case of any person engaged in providing insurance, by the applicable State insurance authority of the State in which the person is domiciled, subject to section 6701 of this title.

(7) Under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], by the Federal Trade Commission for any other financial institution or other person that is not subject to the jurisdiction of any agency or authority under paragraphs (1) through (6) of this subsection.

(8) Under subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau of Consumer Financial Protection, in the case of any financial institution and other covered person or service provider that is subject to the jurisdiction of the Bureau and any person subject to this subchapter, but not with respect to the standards under section 6801 of this title.

**(b) Enforcement of section 6801**

**(1) In general**

Except as provided in paragraph (2), the agencies and authorities described in subsection (a), other than the Bureau of Consumer Financial Protection, shall implement the standards prescribed under section 6801(b) of this title in the same manner, to the extent practicable, as standards prescribed pursuant to section 1831p–1(a) of title 12 are implemented pursuant to such section.

**(2) Exception**

The agencies and authorities described in paragraphs (3), (4), (5), (6), and (7) of subsection (a) shall implement the standards prescribed under section 6801(b) of this title by rule with respect to the financial institutions and other persons subject to their respective jurisdictions under subsection (a).

**(c) Absence of State action**

If a State insurance authority fails to adopt regulations to carry out this subchapter, such State shall not be eligible to override, pursuant to section 1831x(g)(2)(B)(iii) of title 12, the insurance customer protection regulations prescribed by a Federal banking agency under section 1831x(a) of title 12.

**(d) Definitions**

The terms used in subsection (a)(1) that are not defined in this subchapter or otherwise defined in section 1813(s) of title 12 shall have the same meaning as given in section 3101 of title 12.

(Pub. L. 106–102, title V, §505, Nov. 12, 1999, 113 Stat. 1440; Pub. L. 111–203, title X, §1093(4), (5), July 21, 2010, 124 Stat. 2096, 2097.)

## Editorial Notes

## References in Text

The Consumer Financial Protection Act of 2010, referred to in subsec. (a), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitles B (§§1021–1029A) and E (§§1051–1058) of the Act are classified generally to parts B (§5511 et seq.) and E (§5561 et seq.), respectively, of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitles B and E to the Code, see Tables.

This subchapter, referred to in subsecs. (a), (c), and (d), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (a)(1)(B), is classified to subchapter I (§601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (a)(2), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

The Securities Exchange Act of 1934, referred to in subsec. (a)(3), is act June 6, 1934, ch. 404, 48 Stat. 881, which is classified principally to chapter 2B (§78a et seq.) of this title. For complete classification of this Act to the Code, see section 78a of this title and Tables.

The Investment Company Act of 1940, referred to in subsec. (a)(4), is title I of act Aug. 22, 1940, ch. 686, 54 Stat. 789, which is classified generally to subchapter I (§80a–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80a–51 of this title and Tables.

The Investment Advisers Act of 1940, referred to in subsec. (a)(5), is title II of act Aug. 22, 1940, ch. 686, 54 Stat. 847, which is classified generally to subchapter II (§80b–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80b–20 of this title and Tables.

The Federal Trade Commission Act, referred to in subsec. (a)(7), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

### Amendments

**2010**—Subsec. (a). Pub. L. 111–203, §1093(4)(A), substituted "Subject to subtitle B of the Consumer Financial Protection Act of 2010, this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:" for "This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:".

Subsec. (a)(1). Pub. L. 111–203, §1093(4)(B)(i), inserted "by the appropriate Federal banking agency, as defined in section 1813(q) of title 12," before "in the case of—".

Subsec. (a)(1)(A). Pub. L. 111–203, §1093(4)(B)(ii), struck out ", by the Office of the Comptroller of the Currency" before semicolon at end.

Subsec. (a)(1)(B). Pub. L. 111–203, §1093(4)(B)(iii), struck out ", by the Board of Governors of the Federal Reserve System" before semicolon at end.

Subsec. (a)(1)(C). Pub. L. 111–203, §1093(4)(B)(iv), struck out ", by the Board of Directors of the Federal Deposit Insurance Corporation" before "; and".

Subsec. (a)(1)(D). Pub. L. 111–203, §1093(4)(B)(v), struck out ", by the Director of the Office of Thrift Supervision" before period at end.

Subsec. (a)(8). Pub. L. 111–203, §1093(4)(C), added par. (8).

Subsec. (b)(1). Pub. L. 111–203, §1093(5), inserted ", other than the Bureau of Consumer Financial Protection," before "shall implement the standards".

#### Statutory Notes and Related Subsidiaries

### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## §6806. Relation to other provisions

Except for the amendments made by subsections (a) and (b), nothing in this chapter shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], and no inference shall be drawn on the basis of the provisions of this chapter regarding whether information is transaction or experience information under section 603 of such Act [15 U.S.C. 1681a].

(Pub. L. 106–102, title V, §506(c), Nov. 12, 1999, 113 Stat. 1442.)

#### Editorial Notes

### References in Text

Amendments made by subsections (a) and (b), referred to in text, means amendments made by section 506(a) and (b) of Pub. L. 106–102, which amended section 1681s of this title.

This chapter, referred to in text, was in the original "this title", meaning title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which enacted this chapter and amended section 1681s of this title. For complete classification of title V to the Code, see Tables.

The Fair Credit Reporting Act, referred to in text, is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

## §6807. Relation to State laws

**(a) In general**

This subchapter and the amendments made by this subchapter shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

**(b) Greater protection under State law**

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter and the amendments made by this subchapter, as determined by the Bureau of Consumer Financial Protection, after consultation with the agency or authority with jurisdiction under section 6805(a) of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §507, Nov. 12, 1999, 113 Stat. 1442; Pub. L. 111–203, title X, §1093(6), July 21, 2010, 124 Stat. 2097.)

### Editorial Notes

### References in Text

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

### Amendments

**2010**—Subsec. (b). Pub. L. 111–203 substituted "Bureau of Consumer Financial Protection" for "Federal Trade Commission".

### Statutory Notes and Related Subsidiaries

### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## §6808. Study of information sharing among financial affiliates

**(a) In general**

The Secretary of the Treasury, in conjunction with the Federal functional regulators and the Federal Trade Commission, shall conduct a study of information sharing practices among financial institutions and their affiliates. Such study shall include—

(1) the purposes for the sharing of confidential customer information with affiliates or with nonaffiliated third parties;
(2) the extent and adequacy of security protections for such information;
(3) the potential risks for customer privacy of such sharing of information;
(4) the potential benefits for financial institutions and affiliates of such sharing of information;
(5) the potential benefits for customers of such sharing of information;
(6) the adequacy of existing laws to protect customer privacy;
(7) the adequacy of financial institution privacy policy and privacy rights disclosure under existing law;
(8) the feasibility of different approaches, including opt-out and opt-in, to permit customers to direct that confidential information not be shared with affiliates and nonaffiliated third parties; and

(9) the feasibility of restricting sharing of information for specific uses or of permitting customers to direct the uses for which information may be shared.

**(b) Consultation**

The Secretary shall consult with representatives of State insurance authorities designated by the National Association of Insurance Commissioners, and also with financial services industry, consumer organizations and privacy groups, and other representatives of the general public, in formulating and conducting the study required by subsection (a).

**(c) Report**

On or before January 1, 2002, the Secretary shall submit a report to the Congress containing the findings and conclusions of the study required under subsection (a), together with such recommendations for legislative or administrative action as may be appropriate.

(Pub. L. 106–102, title V, §508, Nov. 12, 1999, 113 Stat. 1442.)

## §6809. Definitions

As used in this subchapter:

**(1) Federal banking agency**

The term "Federal banking agency" has the same meaning as given in section 1813 of title 12.

**(2) Federal functional regulator**

The term "Federal functional regulator" means—

(A) the Board of Governors of the Federal Reserve System;
(B) the Office of the Comptroller of the Currency;
(C) the Board of Directors of the Federal Deposit Insurance Corporation;
(D) the Director of the Office of Thrift Supervision;
(E) the National Credit Union Administration Board; and
(F) the Securities and Exchange Commission.

**(3) Financial institution**

**(A) In general**

The term "financial institution" means any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12.

**(B) Persons subject to CFTC regulation**

Notwithstanding subparagraph (A), the term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.].

**(C) Farm credit institutions**

Notwithstanding subparagraph (A), the term "financial institution" does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(D) Other secondary market institutions**

Notwithstanding subparagraph (A), the term "financial institution" does not include institutions chartered by Congress specifically to engage in transactions described in section 6802(e)(1)(C) of this title, as long as such institutions do not sell or transfer nonpublic personal information to a nonaffiliated third party.

**(4) Nonpublic personal information**

(A) The term "nonpublic personal information" means personally identifiable financial information—

(i) provided by a consumer to a financial institution;
(ii) resulting from any transaction with the consumer or any service performed for the consumer; or
(iii) otherwise obtained by the financial institution.

(B) Such term does not include publicly available information, as such term is defined by the regulations prescribed under section 6804 of this title.

(C) Notwithstanding subparagraph (B), such term—

(i) shall include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any nonpublic personal information other than publicly available information; but

(ii) shall not include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived without using any nonpublic personal information.

**(5) Nonaffiliated third party**

The term "nonaffiliated third party" means any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution.

**(6) Affiliate**

The term "affiliate" means any company that controls, is controlled by, or is under common control with another company.

**(7) Necessary to effect, administer, or enforce**

The term "as necessary to effect, administer, or enforce the transaction" means—

(A) the disclosure is required, or is a usual, appropriate, or acceptable method, to carry out the transaction or the product or service business of which the transaction is a part, and record or service or maintain the consumer's account in the ordinary course of providing the financial service or financial product, or to administer or service benefits or claims relating to the transaction or the product or service business of which it is a part, and includes—

(i) providing the consumer or the consumer's agent or broker with a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product; and

(ii) the accrual or recognition of incentives or bonuses associated with the transaction that are provided by the financial institution or any other party;

(B) the disclosure is required, or is one of the lawful or appropriate methods, to enforce the rights of the financial institution or of other persons engaged in carrying out the financial transaction, or providing the product or service;

(C) the disclosure is required, or is a usual, appropriate, or acceptable method, for insurance underwriting at the consumer's request or for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance: Account administration, reporting, investigating, or preventing fraud or material misrepresentation, processing premium payments, processing insurance claims, administering insurance benefits (including utilization review activities), participating in research projects, or as otherwise required or specifically permitted by Federal or State law; or

(D) the disclosure is required, or is a usual, appropriate or acceptable method, in connection with—

(i) the authorization, settlement, billing, processing, clearing, transferring, reconciling, or collection of amounts charged, debited, or otherwise paid using a debit, credit or other payment card, check, or account number, or by other payment means;

(ii) the transfer of receivables, accounts or interests therein; or

(iii) the audit of debit, credit or other payment information.

**(8) State insurance authority**

The term "State insurance authority" means, in the case of any person engaged in providing insurance, the State insurance authority of the State in which the person is domiciled.

**(9) Consumer**

The term "consumer" means an individual who obtains, from a financial institution, financial products or services which are to be used primarily for personal, family, or household purposes, and also means the legal representative of such an individual.

**(10) Joint agreement**

The term "joint agreement" means a formal written contract pursuant to which two or more financial institutions jointly offer, endorse, or sponsor a financial product or service, and as may be further defined in the regulations prescribed under section 6804 of this title.

**(11) Customer relationship**

The term "time of establishing a customer relationship" shall be defined by the regulations prescribed under section 6804 of this title, and shall, in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer.

(Pub. L. 106–102, title V, §509, Nov. 12, 1999, 113 Stat. 1443.)

## Editorial Notes

## References in Text

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Commodity Exchange Act, referred to in par. (3)(B), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (3)(C), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.

### SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

## §6821. Privacy protection for customer information of financial institutions

**(a) Prohibition on obtaining customer information by false pretenses**

It shall be a violation of this subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to another person—

(1) by making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial institution;

(2) by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution; or

(3) by providing any document to an officer, employee, or agent of a financial institution, knowing that the document is forged, counterfeit, lost, or stolen, was fraudulently obtained, or contains a false, fictitious, or fraudulent statement or representation.

**(b) Prohibition on solicitation of a person to obtain customer information from financial institution under false pretenses**

It shall be a violation of this subchapter to request a person to obtain customer information of a financial institution, knowing that the person will obtain, or attempt to obtain, the information from the institution in any manner described in subsection (a).

**(c) Nonapplicability to law enforcement agencies**

No provision of this section shall be construed so as to prevent any action by a law enforcement agency, or any officer, employee, or agent of such agency, to obtain customer information of a financial institution in connection with the performance of the official duties of the agency.

**(d) Nonapplicability to financial institutions in certain cases**

No provision of this section shall be construed so as to prevent any financial institution, or any officer, employee, or agent of a financial institution, from obtaining customer information of such financial institution in the course of—

(1) testing the security procedures or systems of such institution for maintaining the confidentiality of customer information;

(2) investigating allegations of misconduct or negligence on the part of any officer, employee, or agent of the financial institution; or

(3) recovering customer information of the financial institution which was obtained or received by another person in any manner described in subsection (a) or (b).

**(e) Nonapplicability to insurance institutions for investigation of insurance fraud**

No provision of this section shall be construed so as to prevent any insurance institution, or any officer, employee, or agency of an insurance institution, from obtaining information as part of an insurance investigation into criminal activity, fraud, material misrepresentation, or material nondisclosure that is authorized for such institution under State law, regulation, interpretation, or order.

**(f) Nonapplicability to certain types of customer information of financial institutions**

No provision of this section shall be construed so as to prevent any person from obtaining customer information of a financial institution that otherwise is available as a public record filed pursuant to the securities laws (as defined in section 78c(a)(47) of this title).

**(g) Nonapplicability to collection of child support judgments**

No provision of this section shall be construed to prevent any State-licensed private investigator, or any officer, employee, or agent of such private investigator, from obtaining customer information of a financial institution, to the extent reasonably necessary to collect child support from a person adjudged to have been delinquent in his or her obligations by a Federal or State court, and to the extent that such action by a State-licensed private investigator is not unlawful under any other Federal or State law or regulation, and has been authorized by an order or judgment of a court of competent jurisdiction.

(Pub. L. 106–102, title V, §521, Nov. 12, 1999, 113 Stat. 1446.)

## §6822. Administrative enforcement

**(a) Enforcement by Federal Trade Commission**

Except as provided in subsection (b), compliance with this subchapter shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act [15 U.S.C. 1692 et seq.] to enforce compliance with such Act.

**(b) Enforcement by other agencies in certain cases**

**(1) In general**

Compliance with this subchapter shall be enforced under—

(A) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], in the case of—

(i) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

(ii) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], by the Board;

(iii) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System and national nonmember banks) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation; and

(iv) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision; and

(B) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union.

**(2) Violations of this subchapter treated as violations of other laws**

For the purpose of the exercise by any agency referred to in paragraph (1) of its powers under any Act referred to in that paragraph, a violation of this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in paragraph (1), each of the agencies referred to in that paragraph may exercise, for the purpose of enforcing compliance with this subchapter, any other authority conferred on such agency by law.

(Pub. L. 106–102, title V, §522, Nov. 12, 1999, 113 Stat. 1447.)

#### Editorial Notes

### References in Text

The Fair Debt Collection Practices Act, referred to in subsec. (a), is title VIII of Pub. L. 90–321, as added by Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 874, which is classified generally to subchapter V (§1692 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (b)(1)(A)(ii), is classified to subchapter I (§601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (b)(1)(B), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

#### Statutory Notes and Related Subsidiaries

### Transfer of Functions

Functions vested in Administrator of National Credit Union Administration transferred and vested in National Credit Union Administration Board pursuant to section 1752a of Title 12, Banks and Banking.

## §6823. Criminal penalty

**(a) In general**

Whoever knowingly and intentionally violates, or knowingly and intentionally attempts to violate, section 6821 of this title shall be fined in accordance with title 18 or imprisoned for not more than 5 years, or both.

**(b) Enhanced penalty for aggravated cases**

Whoever violates, or attempts to violate, section 6821 of this title while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) or (c)(3) (as the case may be) of section 3571 of title 18, imprisoned for not more than 10 years, or both.

(Pub. L. 106–102, title V, §523, Nov. 12, 1999, 113 Stat. 1448.)

## §6824. Relation to State laws

**(a) In general**

This subchapter shall not be construed as superseding, altering, or affecting the statutes, regulations, orders, or interpretations in effect in any State, except to the extent that such statutes, regulations, orders, or interpretations are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

**(b) Greater protection under State law**

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter as determined by the Federal Trade Commission, after consultation with the agency or authority with jurisdiction under section 6822 of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §524, Nov. 12, 1999, 113 Stat. 1448.)

## §6825. Agency guidance

In furtherance of the objectives of this subchapter, each Federal banking agency (as defined in section 1813(z) of title 12), the National Credit Union Administration, and the Securities and Exchange Commission or self-regulatory organizations, as appropriate, shall review regulations and guidelines applicable to financial institutions under their respective jurisdictions and shall prescribe such revisions to such regulations and guidelines as may be necessary to ensure that such financial institutions have policies, procedures, and controls in place to prevent the unauthorized disclosure of customer financial information and to deter and detect activities proscribed under section 6821 of this title.

(Pub. L. 106–102, title V, §525, Nov. 12, 1999, 113 Stat. 1448.)

## §6826. Reports

**(a) Report to the Congress**

Before the end of the 18-month period beginning on November 12, 1999, the Comptroller General, in consultation with the Federal Trade Commission, Federal banking agencies, the National Credit Union Administration, the Securities and Exchange Commission, appropriate Federal law enforcement agencies, and appropriate State insurance regulators, shall submit to the Congress a report on the following:

(1) The efficacy and adequacy of the remedies provided in this subchapter in addressing attempts to obtain financial information by fraudulent means or by false pretenses.

(2) Any recommendations for additional legislative or regulatory action to address threats to the privacy of financial information created by attempts to obtain information by fraudulent means or false pretenses.

**(b) Annual report by administering agencies**

The Federal Trade Commission and the Attorney General shall submit to Congress an annual report on number and disposition of all enforcement actions taken pursuant to this subchapter.

(Pub. L. 106–102, title V, §526, Nov. 12, 1999, 113 Stat. 1448.)

## §6827. Definitions

For purposes of this subchapter, the following definitions shall apply:

**(1) Customer**

The term "customer" means, with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary.

**(2) Customer information of a financial institution**

The term "customer information of a financial institution" means any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer.

**(3) Document**

The term "document" means any information in any form.

**(4) Financial institution**

**(A) In general**

The term "financial institution" means any institution engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution.

**(B) Certain financial institutions specifically included**

The term "financial institution" includes any depository institution (as defined in section 461(b)(1)(A) of title 12), any broker or dealer, any investment adviser or investment company, any insurance company, any loan or finance company, any credit card issuer or operator of a credit card system, and any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis (as defined in section 1681a(p) of this title).

**(C) Securities institutions**

For purposes of subparagraph (B)—

(i) the terms "broker" and "dealer" have the same meanings as given in section 78c of this title;

(ii) the term "investment adviser" has the same meaning as given in section 80b–2(a)(11) of this title; and

(iii) the term "investment company" has the same meaning as given in section 80a–3 of this title.

**(D) Certain persons and entities specifically excluded**

The term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.] and does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(E) Further definition by regulation**

The Federal Trade Commission, after consultation with Federal banking agencies and the Securities and Exchange Commission, may prescribe regulations clarifying or describing the types of institutions which shall be treated as financial institutions for purposes of this subchapter.

(Pub. L. 106–102, title V, §527, Nov. 12, 1999, 113 Stat. 1449.)

## Editorial Notes

### References in Text

The Commodity Exchange Act, referred to in par. (4)(D), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (4)(D), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.

# ATTACHMENT A

**[SPARK DRIVER EMAIL HEADER/LETTERHEAD]**

**[DATE]**

Hello Driver,

We're contacting you about a settlement between Walmart, the Federal Trade Commission, and several states. In connection with the settlement, Walmart recently sent payments pertaining to the services you provided with the Spark Driver™ app. You received this payment on [DATE(S)]. These payments were intended to compensate you for tips, earnings, or incentives for services you provided and are part of the relief provided under the settlement. The disbursements appear as an *"Adjustment Credit*" in the Spark Driver app. To see a detailed breakdown of the disbursement, go to your account through the main menu of the app. Tap **Earnings overview**, then **Deposit summaries.**

If you did not have a valid primary earnings method linked to your account, your earnings were sent via paper check to the mailing address we have on file on [DATE].

Additional information regarding this settlement can be found at [LINK TO THE FTC'S PRESS RELEASE]. If you have questions regarding these payments, please contact Driver Support at sparksupport@custhelp.com.

Thank you,

Spark Driver Team

**Attachment B**

Pursuant to Section V.F of the Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Stipulated Order"), Defendant shall pay $11,000,000 to the State Plaintiffs, which is to be divided as follows:

**Arizona:** Defendant shall pay $869,726.21 to the Arizona Attorney General's Office to be deposited into the Consumer Protection-Consumer Fund, pursuant to A.R.S. § 44-1531.01, and to be used for the purposes stated therein.

**California:** Defendant shall pay $1,302,748.20 to the Alameda County District Attorney's Office. These funds shall be used and allocated in accordance with Section 17206 of the Business and Professions Code.

**Colorado:** Defendant shall pay $786,871.71 to the Colorado Department of Law. Any payment Defendant makes pursuant to this Stipulated Order to the Colorado Department of Law is to be held, along with any interest thereon, in trust by the Colorado Attorney General to be used in the Colorado Attorney General's sole discretion for reimbursement of the State's actual costs and attorney's fees, the payment of restitution, if any, and for future consumer fraud or antitrust enforcement, consumer education, or public welfare purposes.

**Illinois:** Defendant shall pay $1,155,991.82 to the Attorney General of Illinois pursuant to instructions provided by the Illinois Attorney General's Office. These funds shall be deposited into the Attorney General Court Ordered and Voluntary Compliance Payment Projects Fund for subsequent expenditure as authorized by the Attorney General. Defendant is not entitled to any further accounting regarding the money deposited into the Attorney General Court Ordered and Voluntary Compliance Payment Projects Fund.

**Michigan:** Defendant shall pay $892,962.57 to the Michigan Attorney General's Office. Payment shall be used for reimbursement of attorneys' fees and other costs of investigation; distribution or application to any applicable consumer protection enforcement funds, including future consumer protection enforcement, consumer education, litigation or local consumer aid, or revolving funds; defraying the costs of the inquiry leading hereto; or any other lawful purpose, at the sole discretion of the Michigan Attorney General.

**North Carolina:** Defendant shall pay $1,444,313.78 to the State of North Carolina. The payment to the to the State of North Carolina shall be used for attorneys' fees and other costs of investigation and litigation, or be placed in, or applied to, the consumer protection enforcement fund, including future consumer protection enforcement, consumer education, litigation, or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of the North Carolina Attorney General.

**Oklahoma:** Defendant shall pay $881,997.99 to the Oklahoma Attorney General's Office.

**Pennsylvania:** Defendant shall pay $1,390,875.76 to the Pennsylvania Office of Attorney General for future public protection purposes. The payment shall be used at the sole discretion of the Pennsylvania Attorney General, including but not limited to consumer protection enforcement or consumer education, to defray the costs of the inquiry leading hereto, monitoring and potential enforcement of this Order, or for any other public purpose permitted by applicable state law.

**South Carolina:** Defendant shall pay $987,460.39 to the South Carolina Attorney General. The payment shall be used at the sole discretion of the South Carolina Attorney General for any lawful purpose including, but not limited to, attorneys' fees and other costs of investigation and litigation, or to be placed in, or applied to, the consumer protection law enforcement fund, including future consumer protection enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto or for other uses permitted by state law.

**Utah:** Defendant shall pay $567,810.77 to the Utah Division of Consumer Protection.

**Wisconsin:** Defendant shall pay $ 719,240.80 to the Wisconsin Department of Justice for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection fund, including future consumer protection or privacy enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Wisconsin Attorney General.